

**SIGNED this 13 day of April, 2009.**

_____
**John C. Cook**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| WinPar Hospitality Chattanooga, LLC | ) | No. 07-11908 |
| | ) | Chapter 7 |
| Debtor | ) | |
| | ) | |
| Richard P. Jahn, Jr., Trustee | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adv. No. 08-1149 |
| | ) | |
| United States of America | ) | |
| | ) | |
| Defendant | ) | |

## <u>MEMORANDUM</u>

In this bankruptcy case and related adversary proceeding, issues arose concerning the

proper correlation between bankruptcy law and federal forfeiture law. To address these issues, a

1

joint hearing was held on (1) the motion to alter or amend the judgment dismissing the chapter 7

trustee's adversary proceeding against the United States, and (2) the motion for turnover filed by

the United States in the bankruptcy case of Winpar Hospitality Chattanooga, LLC ("Winpar").

At the conclusion of the hearing, the court orally announced its opinion but, because the court

wishes to restate and supplement its oral opinion into a written opinion, this memorandum will

supplant the oral opinion announced at the close of the hearing.

### I. Background

The record reveals these undisputed facts. The bankruptcy case was commenced by the

debtor, Winpar Hospitality Chattanooga, LLC, on May 18, 2007. Its only asset was a piece of

real estate located at 509 Riverfront Parkway, Chattanooga, Tennessee, which the trustee sold on

or about April 2, 2008, for $7,200,000.00. This sale was profitable to the estate and rendered it

solvent.

On April 28, 2008, the United States commenced a civil forfeiture action against the real

estate in question and its proceeds in the United States District Court for the Middle District of

Florida. The verified complaint filed by the United States alleged that the proceeds of the River-

front Parkway property sale were forfeit to the United States pursuant to 18 U.S.C. §§ 981(a)(1)-

(A) and (C) in that the property had been purchased with the proceeds of violations of certain

criminal statutes, namely 18 U.S.C. §§ 1343 (wire fraud), and 1956 and 1957 (money launder-

ing), which crimes had occurred well before the filing of WinPar's bankruptcy petition. More

particularly, according to the forfeiture complaint, one Frank Amodeo controlled a company that

was involved in massive tax fraud, wire fraud, and money laundering schemes. It alleges that the

Riverfront Parkway property was purchased with the proceeds from Amodeo's scheme to defraud his clients and is thus subject to forfeiture.

As a result of the civil forfeiture complaint, the United States Magistrate Judge in Florida issued a warrant of arrest *in rem* for the proceeds of the property's sale, which were then and are now in the possession of the bankruptcy trustee here. A few days thereafter, on April 30, 2008, the United States, relying on the arrest warrant, filed a motion in this court to compel a "turnover" of the funds in question or, in the alternative, to lift the automatic stay. The United States has not actually served the arrest warrant on the trustee, cautiously preferring to await a decision of this court on whether the automatic stay bars such action. Also on April 30, 2008, the trustee initiated an adversary proceeding against the United States, alleging that it willfully violated the automatic stay by its actions in seeking a forfeiture of the estate funds. Thereafter, on August 6, 2008, the trustee filed an adversary complaint against the debtor's only secured creditor group, referred to as the Atlantic American Group, seeking to set aside alleged fraudulent conveyances and striking the secured creditor group's claim.[1]

On October 9, 2008, pursuant to an agreement among the unsecured creditors, the secured creditor group, Atlantic American Group, and the United States, an agreed order was entered that provided that the unsecured creditors would immediately be paid 80% of their claims in full satisfaction of their claims against the estate, that the claim of Atlantic American

---

[1] The Atlantic American Group consists of Atlantic American Capital Group, LLC, Atlantic American Corporate Group, LLC, J. Patrick Michaels, Jr., Peter H. Collins, Robert Moreyra, and Bradley A. Gordon. This creditor group jointly filed proof of claim asserting a secured claim in the amount of $2,500,000. The trustee's adversary proceeding names these creditors as defendants.

Group would be limited to 80% of its claim plus an amount of attorney's fees in full satisfaction

of its claim against the estate,[2] and that the trustee's pending application for interim compensa-

tion in the amount of $40,000 was approved. The order further provided that the funds remaining

in the estate after the disbursements authorized in the order would remain in the trustee's hands

pending further orders of the court. Although all of the creditors were parties to the compromise

and agreed order, the trustee was not. He believed that the actions of the United States in

pursuing the forfeiture were improper and he declined to sign the agreed order of compromise

between the United States and the bankruptcy estate's creditors.

In the meantime, the United States indicted Frank Amodeo in the Middle District of

Florida and, in late September 2008, Amodeo pled guilty to the indictment, admitted in his plea

agreement that moneys derived from his wire fraud scheme had been used to buy the Riverfront

Parkway property, and agreed that it was forfeit to the United States. On October 2, 2008, pur-

suant to a motion filed by the United States, the district court in Florida entered a preliminary

order of forfeiture authorizing the seizure of the proceeds of the property's sale and providing for

ancillary proceedings at which any claimant to the fund may assert its claim.[3]

---

[2] To the extent that the trustee is successful in striking the claim of the Atlantic American Group pursuant to his adversary proceeding against that group, the net recovery would go to the debtor's sole equity holder, Mirabilis Ventures, Inc., inasmuch as the unsecured claims against the debtor's estate were satisfied in accordance with the compromise agreement.

[3] Fed. R. Crim. P. 32.2(b)(3) provides that the "entry of a preliminary order of forfeiture authorizes the Attorney General (or a designee) to seize the specific property subject to forfeiture . . . ." The order may be amended later if a third party proves during an ancillary hearing that it is a bona fide purchaser or that it had superior title before the commission of the alleged forfeiture offense. 21 U.S.C. § 853 (n)(6).

On October 15, 2008, the trustee filed a complaint initiating a second adversary proceed-ing against the United States, alleging willful violations of the automatic stay arising from the continued efforts of the United States to seek forfeiture of the funds in the hands of the trustee. The trustee's first adversary proceeding against the United States was voluntarily dismissed on October 17, 2008.

Eventually, the United States filed a motion to dismiss or for summary judgment in the second adversary proceeding, arguing that its actions in seeking a forfeiture of the funds in the hands of the trustee did not violate the automatic stay provisions of 11 U.S.C. § 362(a) because of the exception found in 11 U.S.C. § 362(b)(4), namely, the police and regulatory power excep-tion. The trustee filed a cross-motion for partial summary judgement contending that the actions of the United States did constitute willful violations of the automatic stay. The court agreed with the United States and, for the reasons set forth in a memorandum filed on February 6, 2009, an order was entered on February 9, 2009, that granted the government's motion and dismissed the adversary proceeding. On February 23, 2009, the trustee filed a motion to alter or amend the judgment that dismissed the adversary proceeding.

## II.  Trustee's Motion to Alter or Amend

In his motion to alter or amend the judgment that dismissed the adversary proceeding against the United States, the trustee contends that the court overlooked several issues of law when it dismissed the proceeding. Before addressing those issues, it is helpful first to note the specific allegations set forth in the trustee's complaint. The trustee's complaint consisted of two

counts: Count I was labeled "Stay Violations Due to Lack of Jurisdiction in the Orlando

Actions." It alleged as follows:

> The Trustee alleges that since the Orlando Federal District Court never
> acquired jurisdiction over the sale proceeds in either action, its orders were void.
> All along, the United States was impotent to assert that Winpar's proceeds should
> be forfeited to it. It had in fact failed to bring a bona fide, valid action to assert
> any police powers over the sale proceeds, and the stay exception in § 362(b)(4)
> was never triggered. Like the Wizard of Oz, the United States had greatly intimi-
> dated the unsecured creditors, when it was really nothing more than a phantom
> menace. In this regard, the United States hampered the estate's administration and
> repeatedly violated the automatic stay of § 362(a) of the Bankruptcy Code in the
> following aspects:

>> (1) The commencement or continuation of a judicial proceeding against
>> the Debtor or to recover a claim against the Debtor that arose before the
>> commencement of the case under this title.

>> (3) Any act to obtain possession of property of the estate or property from
>> the estate or to exercise control over property of the estate.

>> (6) Any act to collect, assess or recover a claim against the Debtor that
>> arose before the commencement of the case under this title.

Count II of the complaint was labeled "Automatic Stay Violations Where Police Power was Not

Utilized," and it alleged that, even if the Florida District Court had jurisdiction, the actions of the

United States were nonetheless not the use of police power and thus the police power exception

in § 364(b)(4) did not apply.

Thus, both counts in the trustee's complaint alleged violations of the automatic stay. The

first count alleged stay violations because, according to the complaint, the United State" "failed

to bring a bona fide, valid action to assert any police powers over the sale proceeds, and the stay

exception in § 362(b)(4) was never triggered." In its previous memorandum, the court rejected

the assertions in Count I of the complaint because the federal district court in Florida clearly had

jurisdiction to proceed under the provisions of 28 U.S.C. § 1355, which conferred subject matter

jurisdiction on that court and specifically authorized it to issue nationwide process with respect

to the property at issue. The Florida lawsuit was in no way invalid, but rather was a fully legiti-

mate exercise of the district court's forfeiture jurisdiction to condemn property resulting from or

related to criminal activity. Thus, the remaining question was whether the forfeiture action was

stayed by § 362(a) or whether the police power exception in § 362(b)(4) permitted it.

With respect to Count II of the trustee's complaint, the court concluded that the police

power exception in § 362(b)(4) did apply to the Florida forfeiture action and thus the court held

that the United States was not guilty of willful stay violations. In his motion to alter or amend,

the trustee asserts that the court gave insufficient attention to the pecuniary purpose and public

policy tests used to determine whether a given forfeiture action is within or without the auto-

matic stay. The parties agree that the government might or might not use forfeited property to

make restitution to victims, 18 U.S.C. § 981(e)(6). The extent to which it may do so is at this

juncture unknown. But, even if the government ultimately decides to use the forfeited fund to

compensate all the victims of the underlying crimes in the case, the forfeiture mainly and directly

serves the government's interest in the enforcement of its criminal laws, i.e., its police and regu-

latory powers, and is not predominantly designed to serve the pecuniary interests of individuals.

The authorities cited in the court's previous memorandum on this subject establish that such is

the case and do not need reiteration here.

The plain language of § 362(a)(3) imposes a stay against "any act to obtain possession of property of the estate or property from the estate or to exercise control over property of the estate," and then § 362(b)(4) makes an exception for all of the acts described in § 362(a)(3) whenever those acts are undertaken to enforce a "governmental unit's or organization's police and regulatory power." Thus, the annulment of the stay by the police and regulatory power exception would specifically *permit* acts (1) "to obtain possession of property of the estate," (2) to "obtain possession of . . . property from the estate," and (3) to "exercise control over property of the estate." Indeed, this is how courts have interpreted the exception in § 362(b)(4). In *Emerald Casino, Inc. v. Illinois Gaming Board (In re Emerald Casino, Inc.),* No. 03-CV-05457, 2003 WL 23147946 (N. D. Ill. Dec. 24, 2003), the district court noted:

> In 1998, however, § 362(b)(4) was amended by, *inter alia,* "expanding the scope of its exception to cover proceedings 'to obtain possession of property of the estate . . . or to exercise control over property of the estate' otherwise stayed by 11 U.S.C. § 362(a)(3)." Thus, the current statutory language expressly contemplates allowing government regulatory and police action to "obtain possession of property of the estate . . . or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

*Id.* at *7 (citing *SEC v. Brennan,* 230 F.3d 65, 74 (2d Cir. 2000)) (additional citations omitted). In *United States v. Klein (In re Chapman)*, 264 B.R. 565 (B.A.P. 9th Cir. 2001)*,* the Bankruptcy Appellate Panel for the Ninth Circuit concluded that the government could proceed in its forfeiture action against property of the estate despite the trustee's objection that the stay prevented such a proceeding. Citing Collier on Bankruptcy ¶ 362.05[5][b] (15th ed. 2001), the court stated that, "[a]ccording to a leading treatise, the addition of (a)(3) should be read to mean that 'acts to

obtain possession or exercise control over property of the estate . . . would not be stayed.'" *Id.* at

571. The court concluded:

> Trustee also argues that before the granting of a forfeiture judgment, all the government has is an inchoate interest in the Property. Trustee likens the government's position to that of an unsecured creditor before the creditor has a judgment. However, the difference here is that the government is given a right under §362(b)(4) that is not available to a non-governmental entity.
>
> Accordingly, because the government is a governmental unit exercising its police or regulatory power against the Property in accordance with the requirements of § 362(b)(4), it can proceed against the Property.

*Id.* (citation omitted). This court agrees that a plain reading of §362(b)(4) specifically allows acts

by governmental units to obtain possession of property of the estate or to exercise control over

property of the estate in furtherance of their police and regulatory powers.

The prayer section of the trustee's complaint asks this court to find that the United States

willfully violated the automatic stay, that damages and attorney's fees be awarded, that the court

set aside the agreement between the United States and unsecured creditors so that the creditors

would receive a 100% dividend in the case, and that the United States be required to pay the at-

torneys' fees of the unsecured creditors incurred in defense of the actions of the United States.

The trustee also requests that the court dismiss the government's motion for turnover and then

permanently enjoin the United States from seeking to forfeit the funds in possession of the

trustee. Because Counts I and II of the complaint were predicated solely upon alleged violations

of the automatic stay and because the court concluded that the United States did not violate the

automatic stay in light of the police power exception in § 362(b)(4), the court granted the

government's motion and dismissed the trustee's complaint.

9

The trustee continues to argue that "the United States can not maintain its forfeiture pro-ceeding in Florida because the Florida court does not have concurrent jurisdiction over Winpar's asset." Again, Counts I and II of the trustee's complaint alleged willful violations of the stay, and the court dismissed the complaint because the court found no stay to be in effect with respect to the forfeiture action.

As for the trustee's request that the court enjoin either the United States or the district court from proceeding with the forfeiture action, the court interpreted that request to be one based on defending the automatic stay because the trustee offered no independent ground in the complaint for the issuance of an injunction. Even if, however, the trustee's complaint can be construed as asking for injunctive relief on traditional grounds, irrespective of any stay, this court would decline to grant it. As the Supreme Court has explained:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the pub-lic interest would not be disserved by a permanent injunction. The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court reviewable on appeal for abuse of discretion.

*eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *accord*, *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006).

Considering the *eBay* factors *seriatim*, the court finds that the trustee would suffer no ir-reparable injury from the service of the arrest warrant or the preliminary order of forfeiture or

from the subsequent process of the forfeiture action in Florida because the trustee cannot be injured by the proper operation of the federal judicial system. Moreover, the trustee has an adequate remedy at law, to wit, his appearance and participation in the forfeiture action as a claimant to the arrested property. Under 18 U.S.C. §§ 982(a)(6)(B) and 983(d), the trustee will have the opportunity in both civil and criminal forfeiture cases to prove that he is an innocent owner of the fund in question by showing that he is a bona fide purchaser, and he may well argue that 11 U.S.C. § 544(a)(3) gives him that status. If he persuades the district court that he is indeed an innocent owner, he will recover the fund for the benefit of the estate. If not, the fund may be forfeited to the United States. Either way, the trustee will have his day in court where he may seek the remedies that Congress has considered fully adequate in the premises. *Georgia v. Chattanooga*, 264 U.S. 472, 483 (1924) (denying injunction to Georgia where "[a]ll its objections and defenses [to a condemnation] may be interposed in the Tennessee court."); *Porto Rico Tel. Co. v. P.R. Communications Auth.*, 189 F.2d 39, 41 (1st Cir. 1951) (denying injunction where the complaining party has "an adequate opportunity in the legal action to interpose by way of defense and fully to avail himself of the grounds upon which he seeks to enjoin the prosecution of the action.").

As for the balance of hardships, no remedy in equity is warranted here because the proper place for resolving title to the fund in question is the District Court for the Middle District of Florida. That is where jurisdiction and venue lie for the forfeiture proceeding, and it is where the majority of witnesses are to be found. Even assuming that the bankruptcy court somehow would have jurisdiction to adjudicate the forfeiture action here, it would be comparatively harder for the United States to bring all its witnesses and proof to the bankruptcy court than it would be for the

11

trustee to appear in the district court in Florida to present his statutory argument that he is an innocent owner.

Finally, the public interest would be disserved by the issuance of a permanent injunction in this case because an injunction would prevent the United States from trying title to forfeitable property in the courts in which Congress directed such issues should be settled – the district courts. 28 U.S.C. § 1355(a). It must be remembered that the underlying question in this adversary proceeding is title to the fund. The United States argues that it has an interest in the property by virtue of 18 U.S.C. § 981(f), relating to the civil forfeiture, which provides that "[a]ll right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section." The criminal forfeiture statutes contain similar provisions. 18 U.S.C. § 982(a)(6)(B); 21 U.S.C.§ 853(c). The traditional relation-back doctrine recognized in *United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 125-29 (1993), would, upon condemnation of the property, vest title to it in the United States as of the date of the acts giving rise to the forfeiture, a date which precedes the filing of WinPar's bankruptcy and thus the creation of any bankruptcy estate. As the Supreme Court explained the operations:

> [W]hen Congress enacted this innocent owner defense, and then specifically inserted this [21 U.S.C. § 881(h)] [4] relation back provision into the statute, it did not disturb the common-law rights of either owners of forfeitable property or the Government. The common-law rule had always allowed owners to invoke defenses made available to them *before* the Government's title vested, and after the title *did* vest the common-law rule had always related that title back to the date of the

---

[4]Section 881(h) of Title 21 is identical to 18 U.S.C. § 981(f) of the civil forfeiture statutes here at issue.

> commission of the act that made the specific property forfeitable. Our decision
> denies the Government no benefits of the relation back doctrine. The Government
> cannot profit from the common-law doctrine of relation back until it has obtained
> a judgment of forfeiture. And it cannot profit from the statutory version of that
> doctrine in § 881(h) until respondent has had the chance to invoke and offer evi-
> dence to support the innocent owner defense under § 881(a)(6).

*Id.* at 129. It is probable, therefore, that, upon condemnation of the property in question by the district court, the United States would be the owner of that property (and its proceeds) as of a date *before* it became property of any bankruptcy estate. To all intents and purposes, then, what the district court in Florida is deciding is whether or not, following the application of the forfeiture laws of the United States, the fund in question is property of WinPar's bankruptcy estate or not. That determination serves the public interest, both in the proper functioning of the forfeiture laws and in the efficient functioning of the bankruptcy law.

Moreover, the public interest would be disserved by the granting of an injunction in this case.  As the court put it in *James v. Draper (In re James)*, 940 F.2d 46, 53-54 (3rd Cir. 1991), "[i]n carving out the section 362(b)(4) exception, Congress intended to combat the risk that defendants could 'frustrate necessary governmental functions' by seeking refuge in bankruptcy court." If criminals could shield their ill gotten assets from forfeiture by placing them into a bankruptcy court on the eve of a federal forfeiture proceeding and then insisting on the automatic stay or a permanent injunction to prevent the district court from ever trying title to the property, the public policy behind forfeitures would be disserved and so would the underlying purposes of the Bankruptcy Code. It would be both fairer and more convenient to have the district court try the issue of the title of the United States to the property and to decide in its statutory ancillary proceedings whether any innocent owners should be protected. Once that determination is made,

the bankruptcy court would know whether the property was indeed property of the debtor's bankruptcy estate or whether it had been withdrawn from the estate by an adjudication that prior title existed in the United States.

Because the trustee will suffer no irreparable injury, because he has an adequate remedy at law provided for him by statute, because the central issue here can be most conveniently decided by the court entrusted by Congress to make exactly such decisions, and because it is contrary to the public's interest to see national forfeiture law effectively defeated, the court finds that the trustee has not satisfied the requirements for obtaining an injunction in this case.

For all of the foregoing reasons, the trustee's motion to alter or amend the order dismissing the adversary proceeding against the United States will be denied.

### III. United States's Motion for Turnover

Despite the fact that the automatic stay does not prevent the United States from serving its arrest warrant on the trustee and continuing with its forfeiture actions, the trustee argues that the United States is barred from continuing its forfeiture actions by the rule announced in *Penn General Casualty Co. v. Commonwealth of Pennsylvania*, 294 U.S. 189 (1935). The trustee argues that, since the property in question is already within the jurisdiction of the bankruptcy court, no process issued by the District Court for the Middle District of Florida can reach it because two courts cannot concurrently exercise *in rem* jurisdiction over the same property. The trustee contends that, if a bankruptcy court acquires *in rem* jurisdiction over what is believed to be property of the estate before a forfeiture court acquires *in rem* jurisdiction, then the forfeiture

14

action can never be tried and the bankruptcy court may proceed to distribute the property accord-ing to bankruptcy law, simply ignoring the pending forfeiture action in the process.

Because the trustee's theory seems at odds with the provisions §362(b)(4), the court doubts whether the rule stated  in *Penn General* could be or should be used by a bankruptcy court to frustrate the determination of a pending forfeiture action which, after all, seeks to de-termine title to the property. The rule in *Penn General* is a prudential rule employed to avoid conflicts between courts that have concurrent *in rem* jurisdiction over the same property. As stated by the Supreme Court:

> [I]f the two suits are in rem or quasi in rem, requiring that the court or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other. To avoid unseemly and disas-trous conflicts in the administration of our dual judicial system, and to protect the judicial processes of the court first assuming jurisdiction, the principle, applicable to both federal and state courts, is established that the court first assuming juris-diction over the property may maintain and exercise that jurisdiction to the exclu-sion of the other.

*Id.* at 195 (citations omitted).

After thus stating the general rule, the Supreme Court went on to observe, however, that the court first attaining *in rem* jurisdiction "can determine how far it will permit any other court to interfere." *Id.* at 197. The contest in *Penn General* was between a state court and a federal dis-trict court over the assets of Penn General Casualty Company. Despite finding that the district court had first acquired jurisdiction, the Supreme Court held that the district court should relin-

15

quish its jurisdiction to a competing Pennsylvania court because, under the law at the time, the

latter could most appropriately liquidate the state chartered insurance company:

> Although the District Court has thus acquired jurisdiction, the end sought by the litigation in the state court is the liquidation of a domestic insurance company by a state officer. In the absence of a showing that the interests of creditors and shareholders would not be adequately protected by this procedure, the case was a proper one for the District Court in the exercise of judicial discretion, to relinquish the jurisdiction in favor of the administration by the state officer.

*Id.* at 197.

The Supreme Court reached a similar conclusion in *Commonwealth of Pennsylvania v. Williams*, 294 U.S. 176 (1935), in which a federal district court first acquired jurisdiction over the assets of an insolvent corporation by appointing receivers after a shareholder filed suit alleging insolvency and praying for liquidation. Thereafter, the secretary of banking for the state of Pennsylvania applied to the district court to relinquish jurisdiction over the assets of the insolvent association so as to permit the secretary to liquidate the association in accordance with state statutes providing therefor. The district court refused, but the Supreme Court held that the district court should have relinquished its jurisdiction "in favor of the statutory administration of the corporate assets by the state officer." *Id.* at 183. These cases, involving questions of federalism and comity between state and federal courts, establish that under certain circumstances a court, having acquired jurisdiction over a *res*, should relinquish that jurisdiction in the interests of justice. They indicate a procedural solution, founded on logic and fairness, for resolving conflicting judicial interests in a single *res*.

16

In the case at bar, the District Court for the Middle District of Florida and this court are both federal courts, and so no questions of federalism are present. Thus, this case is even stronger for cooperation between two federal courts, cooperation that would entail this court's relinquishment of its jurisdiction over the fund to the extent necessary to allow the district court to adjudicate its forfeiture action. The district court will employ procedures, including ancillary procedures under the forfeiture statutes, that presumably will protect both the debtor's and the trustee's interests in the property in accordance with federal forfeiture law. If the district court decides that the property is forfeitable and that the trustee is not an innocent purchaser, then via the operation of the relation-back doctrine the United States will obtain title to the property as of a date preceding the filing of this bankruptcy petition. Accordingly, the property would not be treated as property of the debtor's estate. On the other hand, if the property is not forfeitable, or if the trustee establishes his status as an innocent owner utilizing § 544(a)(3) of the Bankruptcy Code, then the property would revert to the bankruptcy estate and be administered by this court. bankruptcy case.

If indeed the rule stated in *Penn General Casualty* is applicable to the circumstances of this case, the court believes that it would be an abuse of its discretion to refuse to relinquish its jurisdiction over the *res* to the district court so that title to the property can be determined once and for all in accordance with both federal forfeiture law and bankruptcy law. Accordingly, the government's motion for turnover will be treated as an application to relinquish this court's jurisdiction over the *res* to the District Court for the Middle District of Florida, and the court will grant the application. The government will be allowed to serve its arrest warrant, and, to the

17

extent necessary, its preliminary order of forfeiture in the criminal proceeding, so as to proceed with its forfeiture actions.

Appropriate orders will enter.

###